NATICK GAS LIGHT COMPANY vs. INHABITANTS OF NATICK.
SAME vs. BOSTON AND ALBANY RAILROAD COMPANY.

Middlesex.    November 18, 1898. — February 27, 1900.

Present: KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND,
& LORING, JJ.

*Abolition of Grade Crossings — Alteration of Grade — Discontinuance of
Way — Taking of Land — Statute — Damages.*

A gas company cannot maintain a petition under St. 1890, c. 428, § 5, as amended
by St. 1891, c. 123, § 1, relating to the abolition of grade crossings, against a
town to recover the expense incurred by the petitioner in taking up and relay-
ing its main pipe in a street, the grade of which has been altered by proceedings
under those statutes.

Under St. 1890, c. 428, § 5, as amended by St. 1891, c. 123, § 1, relating to the
abolition of grade crossings, and providing for the recovery of damages sus-
tained by an abutter on a way by the discontinuance of such way " to the same
extent as damages are now recoverable by law by abutters on ways discontinued
by towns," a gas company, which owns land abutting on a street discontinued by
proceedings under those statutes, cannot recover against the town, if it is not
shown that the loss of the right to keep its main pipe in the street diminished
the value of its land ; but it may recover against the railroad corporation the
value of so much of the pipe as lay in its land which was taken by the proceed-
ings in question.

TWO PETITIONS, under St. 1890, c. 428, as amended by St.
1891, c. 123, to recover damages alleged to have been sustained
by the petitioner in its property by the alteration of the grade
of a public way, the discontinuance of a way, and the taking of
land, in connection with the abolition of certain grade crossings
in the respondent town.   The cases were tried together in the
Superior Court, before *Fessenden*, J., who directed the jury to
return a verdict for the respondent in each case ; and, at the re-
quest of the parties, reported the cases for the determination of
this court.   If such direction was right, judgment was to be
entered for the respondent in each case ; otherwise the verdict in
each case was to be set aside and a new trial had.   The facts
appear in the opinion.

The case was argued at the bar in November, 1898, and
afterwards was submitted on briefs to all the justices except
*Holmes*, C. J.

*R. P. Clapp*, for the petitioner.

*P. H. Cooney*, for the respondents.

HAMMOND, J.  By reason of the abolition by proceedings under St. 1890, c. 428, of certain grade crossings of the streets and railroad in Natick, the petitioner was deprived of certain land, and was put to expense in altering some of its mains legally existing in the public streets.  The land taken consisted of a parcel not included in any street, and an adjoining parcel included in the location of Harris Street.  This latter street, upon which the land of the petitioner abutted and into which from its gas works its chief distributing main ran, was discontinued, and the land formerly included within its location was taken for the new location of the railroad, which was built at a grade much below the former grade of the street.  This compelled the petitioner, at an expense of $430, to substitute for the Harris Street main a new one in another locality.  Of this loss $40 was in respect of so much of the main as lay in the petitioner's own land in Harris Street.  By the raising of the grade of Main Street, two blocks distant from this locality, the petitioner was obliged, at an expense of $1,085.51, to take up and relay its main in that street.

The questions raised by the report are whether the company can recover by petitions under St. 1890, c. 428, § 5, as amended by St. 1891, c. 123, § 1, its loss of $1,085.51 on account of the Main Street main, and its loss of $430 on account of its Harris Street main, and if it cannot recover the whole of the latter loss, whether it can recover the $40, which represents its loss in respect of so much of its Harris Street main as lay in its own land in Harris Street.

1. As to the expense with respect to the Main Street pipe. The provision for the assessment of damages in the case of a change of grade of the highway under this statute is found in § 5, which, so far as material to this question, is as follows: "All damages sustained by any person in his property by the taking of land for, or by the alterations of the grade of, a public way," in case the parties cannot agree, may be determined by a jury "in the same manner and under like rules of law as damages may be determined when occasioned by the taking of land for the locating and laying out of . . . public ways."  Whether

the phrase "in the same manner," etc., is to be considered as re-
ferring to the mode of ascertaining the damage already given in
the preceding part of the statute, or as descriptive of the kind of
injury for which damages may be assessed, (see *Rand* v. *Boston*,
164 Mass. 354; *Sheldon* v. *Boston & Albany Railroad*, 172 Mass.
180,) it is certain that, so far as material to the question now
before us, the language of the whole section is no broader than
the provisions of Pub. Sts. c. 49, §§ 14, 16; for by the former of
these two sections damage "sustained by any persons in their
property" by change of grade of the street is given, and by the
latter section it is provided that in estimating such damage
" regard shall be had to all the damages done to the party whether
by taking his property or injuring it in any manner."

It becomes necessary to inquire into the nature of the loss sus-
tained by the company. The pipe was personal property and
the title to it did not change. *Commonwealth* v. *Lowell Gas
Light Co.* 12 Allen, 75. By reason of the change of grade it
was no longer useful as originally placed, but it was still the
property of the petitioner. The petitioner, as against the land
owner, had in itself no easement. Its only right was as stated
by Bigelow, C. J., in *Commonwealth* v. *Lowell Gas Light Co.*, *ubi
supra*, " to use land, the whole beneficial use of which had been
previously taken from the owner and appropriated for a public
use, in such manner that no nuisance shall be committed, no
disturbance be created to the easement of the public, and no in-
jury done to " other parties. It is permitted to share in the gen-
eral use for which the public have paid. But whether this right,
although not rising to the dignity of an easement, be a valuable
one, the loss of which is a damage to the petitioner within the
doctrine laid down in *Marsden* v. *Cambridge*, 114 Mass. 490, it
must, nevertheless, be regarded as subordinate to the general
purpose for which the land was originally taken, to wit, public
travel, and must yield to the necessities of that purpose.

The permission to lay down pipes in the public ways, whether
or not so long as the way remains public and the pipe does not
interfere with the other general public uses it be revocable, must
be held to have been granted originally upon the condition that
the pipes, neither at the time of the laying nor thereafter, shall
interfere with the public travel upon the way as then existing or

as it may thereafter be changed to meet the reasonable exigencies of such travel. To hold otherwise, and to say that whenever under the statute permission a gas pipe is laid in a public way the pipe cannot be disturbed, even to make such changes as are required by public travel, except under the right of eminent domain, is to make what is a merely subordinate use paramount to the great important use for which the land is taken. Such a construction seems to us unreasonable.

Under the true construction it is plain that no legal right to property of the petitioner was invaded ; and even if it be claimed that the language of the statute is broad enough to give damages in some cases for injuries suffered not as the consequence of the loss, or invasion of a legal right, still we cannot apply any such rule here. In removing its pipes the petitioner was simply complying with an implied condition annexed to the permission under which its pipes were laid. It had agreed in law that its pipes should lie in the way at its peril, so far as respects the exigencies of public travel. It was, therefore, not entitled to recover for the expense as to the pipe in Main Street.

2. As to the loss of $430 in respect of the Harris Street main. There is an additional reason why this loss cannot be recovered. It was due neither to a taking of land for, nor to the alteration of the grade of, a public way, and the town could be held only on the ground that the damage was occasioned by the discontinuance of the street. While the statute as first enacted contemplated that by proceedings under it public ways would be discontinued, it did not expressly mention the subject of damages by such a discontinuance. See St. 1890, c. 428, §§ 4, 5. In the year 1891, an amendment was enacted " so as to provide for the assessment of damages in case of the discontinuance of a public way." This amendment does not say that all damages sustained by any person in his property by the discontinuance of a public way in effecting the abolition of a grade crossing shall be paid for. The amendment was by inserting certain words in St. 1890, c. 428, § 5, and we quote the beginning of the section as amended. " Section 5. All damages sustained by any person in his property by the taking of land for, or by the alterations of the grade of, a public way, or by an abutter thereon, for the discontinuance of such public way, to the same extent as damages

are now recoverable by law by abutters on ways discontinued by towns, shall primarily be paid by the city or town." The new obligation is only to abutters on the discontinued way, and for such damages only as are recoverable by law by abutters on ways discontinued by towns. The gas light company was, in the language of the statute, an abutter on the discontinued Harris Street, and the further question is whether its loss with respect to the Harris Street main was a damage recoverable by law by an abutter on a way discontinued by a town.

What damages are. " recoverable by law by abutters on ways discontinued by towns" is an inquiry to which our statutes and decisions give no easy or categorical answer. The statutes now in force and most closely relating to the subject are Pub. Sts. c. 49, §§ 66, 68, which give towns the right to discontinue town ways and private ways, and say that " if damage is sustained by a person in his property by the . . . discontinuance of a town way or private way, . . . he shall receive such compensation as the selectmen or road commissioners shall determine." There is contained also in Pub. Sts. c. 49, § 16, a rule for estimating the damage sustained by discontinuing a highway, which is regarded as applicable to damages occasioned by the discontinuance of town ways also, and is that regard shall be had to all the damages done to the party and that the benefit, if any, to his property shall be allowed by way of set-off. The earlier statutes seem to be of no special importance to the present inquiry. See Sts. 1785, c. 75, § 7; 1812, c. 121; 1826, c. 171, § 5; 1827, c. 77, §§ 11, 12; Rev. Sts. c. 24, §§ 70, 76, and also §§ 11, 13, 31; Gen. Sts. c. 43, §§ 60, 62, and also §§ 14, 16. St. 1824, c. 153, § 3. Cases in which the subject has been before this court are *Hallock* v. *Franklin County,* 2 Met. 558; *Fenner* v. *Sheldon,* 11 Met. 521, 524; *Smith* v. *Boston,* 7 Cush. 254; *Perry* v. *Sherborn,* 11 Cush. 388; *Castle* v. *Berkshire County,* 11 Gray, 26; *Hawkins* v. *County Commissioners,* 2 Allen, 254; *Webster* v. *Lowell,* 139 Mass. 172; *Webster* v. *Lowell,* 142 Mass. 324; *Spaulding* v. *Nourse,* 143 Mass. 490; *Davis* v. *County Commissioners,* 153 Mass. 218; *Hammond* v. *County Commissioners,* 154 Mass. 509; *Stanwood* v. *Malden,* 157 Mass. 17; *Nichols* v. *Richmond,* 162 Mass. 170. See also *Pearson* v. *Allen,* 151 Mass. 79, 83; *Shaw* v. *Boston & Albany Railroad,* 159 Mass. 597. In these decisions

it has been settled that the damage must be the direct and immediate consequence of the discontinuance, and that indefinite, remote, and contingent damages are not recoverable. Inconveniences which the petitioner experiences in common with all the rest of the community, and which consequently are not special or peculiar in kind, he cannot have compensation for, although, in consequence of the proximity of his lots or buildings to the place discontinued, he may feel the inconveniences more than others. Therefore, although the petitioner's land may abut upon the part of the street which is discontinued, if his property is still accessible by public ways, and his only complaint is that access to it is not so easy as before, he cannot recover. But in the leading case of *Smith* v. *Boston*, the court declined to lay down a rule that in no case can a man have damage for the discontinuance of a way unless his land bounds upon it; and in *Webster* v. *Lowell*, a verdict giving damages for narrowing the debouchement of a private way by the discontinuance of a part of the street into which it opened was sustained, although the private way was one gained by prescriptive use in connection with land which in its whole frontage abutted on that part of the same public street which was not discontinued, and so continued to be accessible by a public street. In none of the cases has any claim for damages been considered or passed upon, except claims for cutting off or making more inconvenient the access of travel to some parcel of land.

Besides being open for travel, public streets may be put to many other valuable uses by the owners of abutting estates, and by others, and if the right to make these uses of the street is taken away by the discontinuance of the street, the abutter or the person enjoying the valuable use will be damaged. An abutter may maintain in the street his own particular drain connecting his land with the common or public sewer. He may so maintain his own service pipe connecting the plumbing of his buildings with the street water main of the city or town or of a water company authorized to supply water. He may have his own private wires or pipes in the street connecting his premises with the pipes or wires of gas companies, or of electric light companies or of telephone companies, or of steam heating companies or pneumatic service companies, authorized to have their pipes, wires, or conduits in the street.

So, too, street railway companies, gas, water, electric light, telegraph, telephone, pneumatic service, steam heating and power, and other like companies may obtain legal permission to have their structures and appliances in the public streets. By the discontinuance of the street, if the abutter or the corporation so using the street had no other right to maintain these structures or appliances than that which depended upon the fact that the place where they were was a public street, but had a right to have them there so long as the street existed, the right would be lost by the discontinuance of the street, and the loser would be damaged. This damage would be neither indefinite, remote, nor contingent, nor experienced in common with all the rest of the community, but would be special and peculiar in each instance. Could it be recovered in all or any of the cases instanced, or would it be held as it was suggested in *Stanwood* v. *Malden, ubi supra*, that "it would have been intelligible for the Legislature to say that, when a benefit is conferred upon a landowner, the value of which he does not pay for, he takes it upon the implied condition that he shall not be paid for it when it is taken away?"

Whatever answer may be given to any of these questions, we think that no one now has a right to recover for the discontinuance of a way by a town, unless he can show that some parcel of his land is diminished in value by the discontinuance. It is not enough to show such a diminution in value, if it is caused merely by lessening the convenience of approach, if the land is still freely accessible by public ways. If the diminution in value is caused by the loss of the right to maintain in the street particular drains, pipes, conduits, wires, or the like appliances, even if the damage should be considered a peculiar and special one and recoverable, if the loss of the right did not diminish the value of some parcel of the petitioner's land, he could not recover, although the loss of the right entailed pecuniary loss of some other nature. As the damages "recoverable by law by abutters on highways discontinued by towns" are in our opinion restricted to damages caused by the diminution of the value of land, we think no other damages for the discontinuance of a public way by proceedings for the abolition of a grade crossing are made payable by St. 1890, c. 428, § 5, as amended by St. 1891, c. 123, § 1. In the present case, it is not shown by the agreed

statement of facts on which the trial was had that the loss of the right to keep its main on Harris Street diminished the value of the gas company's land, and therefore that damage cannot be recovered of the town in the petition against it.

We think that so much of the loss in respect of the Harris Street main as is due to that part of it which was in the portion of the gas company's land included in the street, and, upon the discontinuance of the street taken for the new location of the railroad, was recoverable in the petition against the railroad company, as an element in the value of the land taken and the diminution of the value of the petitioner's remaining land. The gas company did not lose its right to keep that part of the main where it was by the discontinuance of the street, because the gas company had the fee, but did lose the right by the taking for the railroad. Upon that taking the right of the gas company was extinguished, and the damages to be paid for the taking should be assessed in view of the presence of the main in the petitioner's land taken.

According to the terms of the report judgment is to be entered for the town in the first case, and in the second case the verdict is to be set aside and a new trial had.          *So ordered.*