SOLOMON WINE *vs.* COMMONWEALTH.

Suffolk.     February 9, 1938. — November 14, 1938.

Present: DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Eminent Domain,* Right to damages. *Limitations, Statute of. Way,*
Public: specific repairs. *Release. Damages,* For property taken or
damaged under statutory authority.

The phrase in G. L. (Ter. Ed.) c. 79, § 9, "the work which caused the
injury," means the particular portion of the work on a public im-
provement which caused the injury.
Under G. L. (Ter. Ed.) c. 79, § 9, a landowner's right to damages for
injury from a reconstruction of an abutting highway as part of a pub-
lic improvement vested immediately upon the completion of the
reconstruction, although the whole improvement was not then com-
pleted; and a petition to enforce such right, brought after a year
from the date when the reconstruction was completed although
within one year after the completion of the entire improvement,
was barred.
A landowner, who, after the completion of a certain part of a public
improvement which had caused him injury, suffered further injury
from being temporarily deprived of all access to the municipal high-
way system in connection with later work on the improvement, was
entitled to have his damages for the later injury assessed under G. L.
(Ter. Ed.) c. 79, § 9, upon a petition filed within a year after the
completion of that later work although his right to damages for the
earlier injury had become barred.
A release, given in November, 1934, by a landowner who had suffered
damage from a reconstruction of an abutting highway in that year,
of all claims which he then had or might thereafter have arising from
the "alteration and construction/reconstruction" of the highway
"during the year 1934," did not apply to a claim for damages which
resulted from being deprived for several months beginning in March,
1935, of all access to the municipal highway system during further
operations in completing the same public improvement of which the
highway reconstruction was a part.
The temporary closing of all ways giving access to certain land from the
municipal highway system during the carrying out of a public im-
provement pursuant to formal orders of a board of public officers
caused special and peculiar injury to the landowner, and he had a
right to damages under G. L. (Ter. Ed.) c. 79, § 9, measured by the
diminution of the value of his land in reference to the use for which it
was adapted.

PETITION, filed in the Superior Court on April 30, 1936.

A verdict for the respondent was ordered by *Brown*, J. The petitioner alleged exceptions.

*E. W. Hadley*, for the petitioner.

*A. V. Sullivan*, Assistant Attorney General, for the Commonwealth, submitted a brief.

DOLAN, J. This is a petition for assessment and award of damages under G. L. (Ter. Ed.) c. 79. The case was tried to a jury and at the close of the petitioner's evidence the judge allowed the respondent's motion for a directed verdict in its favor.

The jury would have been warranted in finding the following facts: In 1934, the petitioner was the owner of a parcel of land on the easterly side of North Shore Road, in Revere, between Revere Street and the railroad overpass at the Point of Pines. He operated a gasoline filling station on the premises. When he purchased the property in 1925, North Shore Road was in good condition and heavily travelled. This condition continued until the early part of 1934, when the respondent, acting by its department of public works and under authority of St. 1932, c. 241, as amended by St. 1933, c. 349, proceeded to construct a new bridge with approaches thereto over the Saugus River between the Point of Pines, in the city of Revere, and the city of Lynn, with necessary drainage outlets, and to make alterations in connecting ways. North Shore Road, Revere, between Revere Street and the railroad overpass at the Point of Pines, is bordered westerly by a marsh and easterly by an enclosed railroad right of way, and "between the two named termini ingress to that portion of North Shore Road" and the abutting property can be had only by a "dirt street" known as Oak Island Street, which "bridges over the railroad easterly" and leads to Revere Beach Boulevard. Early in the year 1934, the respondent began work upon the reconstruction of North Shore Road. It was closed entirely and a new road built with a long "island" down the center, so that thereafter traffic bound southerly on the road could not cross to the petitioner's premises without going a long way beyond. This particular work

was completed and the road reopened about four months prior to March, 1935. The "rebuilding of the road" left the petitioner's land "below grade."

On November 10, 1934, the petitioner executed a release, wherein it was recited that in consideration of the sum of "Four hundred dollars . . . and other valuable considerations" paid to him by the Commonwealth, the receipt whereof was acknowledged, he "remise[d], release[d] and forever discharge[d] the said Commonwealth . . . its successors and assigns, its officers, employees, servants and agents, of and from all actions, causes of action, suits, and all claims . . . of every form or nature," which he then had or might thereafter have, "for or by reason of the laying out/alteration and construction/reconstruction during the year 1934 of the State highway adjoining . . . [his] property on North Shore Road in the . . . city of Revere, and any change of grade of said highway, and/or any extension of slopes and alterations in the buildings, structures, drainage, driveways or entrances on said property . . . ." The petitioner testified that he "does not read English well enough to understand the paper, told this to the representative of the Commonwealth who brought him the paper, did not read the paper, and stated that he would only receipt for the money paid to him without surrendering further rights, and that the representative of the Commonwealth stated that that was all there was to the paper and thereby induced the . . . [petitioner] to sign it." On cross-examination he "acknowledged that he was a voter; that at the time he qualified as a voter he had read part of the Constitution of the United States."

About March 1, 1935, the respondent "again entirely closed" the road by "blockading it and tearing out the railroad over-pass" north of the petitioner's premises, and by barricading the road at Revere Street, south of the petitioner's premises, and by barricading the entrance between these two points from Oak Island Street, thus shutting off access to the premises from the general system of public highways of the city. This condition continued until July 3, 1935. In the intervening period the railroad overpass,

at which point North Shore Road and the Revere Beach Boulevard convene, just south of the new General Edwards bridge, was completed. During the two periods when that portion of North Shore Road upon which his premises abut was closed to travel, the petitioner did no business on his property, and was obliged to close his filling station. After the expiration of the last period referred to, he rented his filling station for two months at $50 a month, but the tenant then vacated the premises "because very little business came in." The petitioner has tried since to rent the premises, "but when people see the 'island' down the center of the road they decline to deal." During the two years prior to the rebuilding of the road his average gross income from the premises was about $500 a week, but "now he cannot get $50 per month." Prior to the rebuilding of the road the fair market value of his property was about $7,000. When the "rebuilding and closings were all over the fair market value of the property was $500." The respondent's answer admits some, and denies others, of the petitioner's allegations and pleads that "the petition was not brought within the time limit set by statute."

It is unnecessary to consider at this point whether the evidence relating to the issue of fraud in connection with the execution of the release was sufficient to require its submission to the jury, as we are of opinion that any possible right of the petitioner to recover for damage sustained by him in the reconstruction of the road in front of his premises in 1934 was barred at the bringing of the petition by the passage of the statutory period in which such a proceeding could be begun.

St. 1918, c. 257, § 187, inserting in the Revised Laws c. 48A (now G. L. [Ter. Ed.] c. 79), was enacted in pursuance of reports of the commissioners to consolidate and arrange the General Laws. By § 46 of c. 48A, all acts and parts of acts inconsistent therewith were repealed. Section 9 of G. L. (Ter. Ed.) c. 79 governs those cases where injury has been caused to the real estate of one "in accordance with a formal vote or order of the board of officers of a body politic or corporate duly authorized by

law," but without a taking. It provides that "the right to damages shall not vest . . . until the work which caused the injury has been completed." The announced purpose of the commissioners in framing the statute is of value in determining its meaning. See *Walker* v. *Medford*, 272 Mass. 161, 164; *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 8. They state in their report that "The characteristic cases to which this section [9] is applicable are the ordering of specific repairs upon a highway or town way . . . ." See Preliminary Report of the Commissioners, vol. 1, page 20. Apparently § 9 changed the law theretofore existing which, in the case of specific repairs, was that a petition for assessment of damages be made "before the expiration of one year . . . from the day when the work is actually commenced." See St. 1917, c. 344, Part 2, § 28.

G. L. (Ter. Ed.) c. 79, § 10, covers cases where injury has been caused to the property of one entitled to compensation therefor by acts not performed in accordance with a formal vote or order of an authorized board of officers. Section 10 provides, in part: "In case of a specific taking, entry, seizure or other act causing destruction or damage or depriving the owner of the use of his property permanently or for a definite period of time the damages shall be assessed as of the date of such taking, entry, seizure or other act and the right thereto shall vest on such date and a petition for an award of damages therefor under this section may be filed within one year thereafter; otherwise damages shall be assessed with respect to any parcel of property as of the date when such property was first injuriously affected, the right thereto shall vest upon the completion of the public improvement which caused the injury, and a petition for an award of damages therefor under this section may be filed within one year after such completion." Section 14 provides that "A person entitled to an award . . . under this chapter . . . may petition for the assessment of . . . damages . . ."; and § 16 provides that a "petition . . . under section fourteen may be filed within one year after the right to such damages has vested." The limitation of time imposed by § 16 limits

the right as well as the remedy and the court has no juris-
diction to entertain a petition under § 14 after the time
fixed by § 16 has elapsed. See *L'Huilier* v. *Fitchburg*, 246
Mass. 349, 352; *Jordan* v. *County Commissioners of Bristol*,
268 Mass. 329, 333; *Grove Hall Savings Bank* v. *Dedham*, 284
Mass. 92, 94. The petitioner's right to recover for damage
sustained by the acts of the respondent in 1934 arose under
§ 9. The work then performed was that of specific repairs.
See *Bigelow* v. *City Council of Worcester*, 169 Mass. 390;
*L'Huilier* v. *Fitchburg*, 246 Mass. 349, 351. The nature
and extent of all proposed changes to be effected were
definitely set out by the respondent's department of pub-
lic works. Hence the petitioner's right to damages vested
when "the work which caused the injury . . . [was] com-
pleted." The petition was not filed until April 30, 1936,
or more than one year after the work on the road was
completed, but less than one year after the whole work of
constructing the new bridge with approaches thereto was
completed. It would seem that all the work constituted
but one public improvement. See *Quinn* v. *Mayor &
Aldermen of Springfield*, 233 Mass. 595, 597, 598; *King* v.
*Aldermen of Springfield*, 247 Mass. 548, 551. The parties
are in accord on this point. However, under the provi-
sions of § 9 the "right to damages shall not vest . . .
until the work which caused the injury has been com-
pleted." If the year ran from the completion of the par-
ticular part of the public improvement which caused the
injury, the petitioner is barred from recovery for damage
sustained by reason of the work done by the respondent
in 1934. We are of opinion that the words "the work
which caused the injury" refer to the particular portion
of the work on the public improvement which caused the
injury and that the petitioner's right to recover for damage
sustained by the work done in 1934 vested immediately
upon the completion of that work, without reference to
whether the entire public improvement, of which the work
causing the injury was a part, was completed. While the
point does not seem to have been passed upon before, this
construction is strengthened by the unusual language of

the statute itself, and by the fact that, if the statute were to be construed to mean that the right to damages shall not vest until the completion of all the work involved in a public improvement of this character, hardship might result in cases where the completion of a public improvement embraced a relatively long period of years, whereas the particular part of the work on the improvement which caused the injury might have been completed at or near the time when the improvement was begun. This view is also fortified by a consideration of the fact that § 10, which deals with the award of damages for acts *in pais,* provides that, in cases other than a specific taking, entry or other acts causing destruction or damage or deprivation of the use of property, the right to damages shall vest upon the completion of the "public improvement" which caused the injury. Where language is used in one section different from that employed in other sections of the same chapter and from that used in statutes which existed prior to its enactment, it is to be presumed that the language is used with a different intent. *Rutland* v. *Mendon,* 1 Pick. 154, 155. *Commonwealth* v. *Hartnett,* 3 Gray, 450, 451. See *Wilson* v. *Grace,* 273 Mass. 146, 154.

We think that the petitioner's right to damages under § 9 resulting from the reconstruction of the road in 1934 vested upon the completion of that work in that year, and that his right to recover such damages was barred prior to the bringing of the present petition.

The question remains as to his right to recover for injuries sustained as a result of the obstruction of access to his premises in 1935.

In this connection we think that the release given by him, to which reference has already been had, did not by its terms relate to damage other than that occasioned by the reconstruction of the road in front of his premises in 1934, and that it does not constitute a bar to his claim for damage sustained by him as a result of the respondent's acts in 1935, if otherwise the respondent is liable therefor. As to these acts, the statutory period for bringing the present petition had not expired at the date of its inception.

His petition was filed within one year after the completion of the work in 1935 which caused him injury by obstructing access to his premises.

It has been established under similar statutes that, if during a public improvement access to buildings is rendered impossible by an obstruction placed in the highway, such interference is an injury special and peculiar to the use of the premises, and direct and proximate, for which the abutting owner, (or others in special cases,) is entitled to recover. See *Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537, 539–540; *Munn* v. *Boston*, 183 Mass. 421, 423, 424; *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279, 281; *Meisel Press Manuf. Co.* v. *Boston*, 272 Mass. 372, 380.

Nothing in G. L. (Ter. Ed.) c. 79, § 9, shows any intent to confine damages to actual physical injuries to property itself. The only limitation placed upon the right to damages is that the one injured be "entitled to compensation by law for such injury," that the injury be special and direct as distinguished from remote and consequential. See *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279, 281. The closing of the road beyond the petitioner's premises as a result of the construction of the overpass and of the bridge, which diverted traffic with resultant damage to him, standing alone, was not a special injury, but one general to the public as a whole. See *Davis* v. *County Commissioners*, 153 Mass. 218, 224, and cases cited; *Putnam* v. *Boston & Providence Railroad*, 182 Mass. 351, 353; *Hyde* v. *Fall River*, 189 Mass. 439, 440. We think, however, that the placing of barricades at the entrance to North Shore Road at Revere Street and Oak Island Street, thus shutting off access to the petitioner's premises from the general system of the public highways of the city, did constitute injury special and peculiar to him, which did not affect the general public. It follows that the case should have been submitted to the jury for determination of the damage, if any, thus sustained by the petitioner, not by loss of business as business, but by any diminution in the value of the real estate involved in reference to the

uses for which it was adapted.  *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537, 539.  *Putnam* v. *Boston & Providence Railroad,* 182 Mass. 351, 354.

The petitioner's exceptions must therefore be sustained.

*So ordered.*