BIANCA ARAGONA & another *vs.* ANTONIO PARRELLA.

Norfolk.    January 5, 1950. — April 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence,* Invited person, Gross, One owning or controlling real estate.

A mortgagee under a mortgage in the statutory form, who went to the mortgaged premises to inspect them pursuant to an agreement that he might do so made with the mortgagor before the execution of the mortgage and merged therein, or as a result of an invitation by the mortgagor, for which there was no consideration, extended in conversations subsequent to the execution of the mortgage, was not a business visitor of the mortgagor and could not recover from him for personal injuries sustained in a fall on the premises if the fall was due to ordinary negligence on his part.

Gross negligence on the part of the owner of a house toward a visitor therein was not shown by evidence of the circumstances in which the visitor, upon being directed by the owner to a bathroom through an unlighted hall, opened a door from the hall onto a stairway and fell down the stairway.

TORT. Writ in the Superior Court dated July 8, 1947.

The action was tried before *Donahue,* J.

*M. H. Kramer,* for the plaintiffs.

*R. W. Cornell,* for the defendant.

COUNIHAN, J. This action of tort is here on the plaintiffs' exception to the direction by the judge of a verdict for the defendant after the opening statement of counsel for the plaintiffs. The plaintiffs are husband and wife. The action arises out of personal injuries sustained by the wife in a fall on the defendant's premises on September 29, 1942. There were counts for negligence and gross negligence of the defendant in the wife's action and for consequential damages in the husband's. Since the rights of the husband depend on those of the wife, we shall hereinafter refer to her as the plaintiff.

After counsel for the plaintiff made his opening, there was a discussion between him and the judge regarding the facts counsel had stated he intended to prove, at the end of which the judge asked counsel if he had stated all the facts on which he intended to rely and counsel replied that he had. Thereupon the judge directed a verdict for the defendant.

A directed verdict for the defendant upon the opening statement is proper if the statement of counsel, treated as facts, together with all reasonable inferences of which those facts are susceptible, cannot, upon any reasonable view of those facts and inferences, be deemed sufficient to support the plaintiff's cause of action. The facts set forth in the opening must be considered as true and in the light most favorable to the plaintiff. If the opening plainly fails to show a cause of action, a verdict may be ordered. The power to dispose of a case on the opening must be exercised cautiously and only when it is apparent that the plaintiff cannot supply evidence necessary to establish his case. *Passler* v. *Mowbray*, 318 Mass. 231. *Douglas* v. *Whittaker*, 324 Mass. 398, 399–400, and cases cited.

There was no error in directing a verdict for the defendant because the facts stated in the opening would not warrant a verdict for the plaintiff. It appears from the opening that the plaintiff proposed to prove that sometime prior to July 31, 1942, the defendant sought a mortgage from the plaintiff to assist him in the purchase of the premises where the plaintiff sustained her injury and as a result the

plaintiff, who was familiar with mortgage transactions, inspected the premises. Because the second floor was occupied by a tenant, she was unable to see it and the defendant agreed that, after he moved in, the plaintiff could view this floor. The deed to the defendant and a mortgage in statutory form from the defendant to the plaintiff were executed on July 31, 1942, and the money secured by the mortgage was then paid. "As the result of several conversations they had between July 31, 1942, and September 29, they did agree on a time that Mrs. Aragona would be able to go to Brookline and see these premises, and under that arrangement she agreed to go. They welcomed her, asked her to come, and in addition to that invited Mrs. Aragona to have dinner there that night, and these people had been friendly prior to July 31." The plaintiff with a nine or ten year old niece went to the premises occupied by the defendant at about 6 P.M. on September 29, 1942. She sat in the kitchen with the defendant and others. After she had been there a short time she asked to be directed to the washroom, and the defendant said: "Walk out into the hall, and the first door on the right, or the door on the right is the bathroom door." This apartment had a long hall which ran from the extreme front to the extreme rear of the house. The kitchen was in the back part of the house on the left hand side as one walked from the front to the rear. The hall extended beyond the kitchen and "this door" (through which she fell) was on the right leading from the hall beyond the kitchen. There were no lights in the hall. She went into the hall, opened a door which swung outward, took a step at the threshold and her foot went down, causing her to fall about twenty steps. She had been told "when she opened the door to reach for a chain attached to a light, and put it on and go in." The plaintiff had very defective vision and the defendant knew of it.

From the opening of the plaintiff it is clear that she intended to prove that she was a business invitee to whom the defendant would be liable for ordinary negligence. Indeed counsel said, "I want to point out that it is the plain-

tiff's contention here that this plaintiff, in coming upon these premises, came not as the ordinary gratuitous invitee, but came rather in the status of one who had paid for the right to be there . . . . I want to point out it is the plaintiff's contention, and as will appear in the covenants of the mortgage, she had a right to observe these premises to see whether or not they were being maintained as they should be." He also contended that the agreement, entered into before the mortgage was executed, to permit the plaintiff to inspect the second floor after the defendant moved in created the status of a business invitee in the plaintiff. These contentions he also substantially argued in his brief, and although there was no claim in the opening that she was a social guest, he did argue in his brief that the plaintiff should have gone to the jury on the question of the gross negligence of the defendant.

We shall first consider whether or not the plaintiff was on these premises as a business invitee of the defendant to whom the defendant would be liable for ordinary negligence. *Alberts* v. *Brockelman Brothers, Inc.* 312 Mass. 486, 490. *Fortier* v. *Hibernian Building Association of Boston Highlands,* 315 Mass. 446, 447. We believe that the plaintiff was not a business invitee when the accident happened. No benefit could result to the defendant from the visit, and any mutuality of business interest had come to an end on July 31, 1942, when the mortgage was executed. The defendant was in possession as mortgagor, and so long as he was suffered to remain in possession he had the right in and control of the mortgaged property incident to the possession thereof not only as to all the world other than the mortgagee but also as to the mortgagee. *Chamberlain* v. *James,* 294 Mass. 1, 8–9.

To show that she was a business invitee the plaintiff relies also on an agreement entered into before the mortgage was executed, that she could inspect the second floor after the defendant moved in. This avails her nothing for any such agreement merged into the mortgage when it was executed. *Williams* v. *Hathaway,* 19 Pick. 387.

If the agreement to inspect was made as a result of the several conversations between the plaintiff and the defendant after the mortgage was executed, there clearly was no consideration for it.

If the plaintiff intended to prove that she was a social guest (and this is doubtful from the assertions in the opening), the defendant would be liable only for gross negligence. *Comeau* v. *Comeau*, 285 Mass. 578, and cases cited. There were no facts alleged in the plaintiff's opening from which the jury could find that the defendant was guilty of gross negligence.

*Exceptions overruled.*