LILLIAN TASSINARI *vs.* MASSACHUSETTS TURNPIKE
AUTHORITY.

Suffolk.    January 8, 1964. — March 12, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Eminent Domain,* Right to damages. *Way,* Public: closing. *Practice,
Civil,* Opening to jury, Ordering verdict, Pre-trial procedure, Stipulation. *Evidence,* Judicial notice.

In passing on the propriety of ordering a verdict for the respondent upon
    the petitioner's opening to the jury at the trial of a petition for assessment of damages under G. L. c. 79, the statements made in the opening
    must be taken to be true.    [223]
Judicial notice was not to be taken of the width of streets in a certain part
    of Boston, or of illegality of backing a vehicle out of a side street into
    a through street in that part of the city.    [224]
A pre-trial stipulation that the "pleadings are complete" did not of itself
    bar ordering a verdict for the respondent upon the petitioner's opening
    to the jury at the trial of a petition for assessment of damages under
    G. L. c. 79.    [224–225]
The facts, that, prior to the closing of one end of a through street in a
    city by a public improvement not involving a taking of certain property
    located on the street, there had been access to the property "from either
    end" of the street, vehicles "would drive up to the property," and customers of a business conducted on the property "would come to purchase merchandise," and that after the closing of the end of the street
    vehicles "would no longer enter" the street, the "only means of egress
    was to back up the length of the street," there was a "marked decline in
    the volume of" the business, and there was a substantial diminution of
    the value of the property as "a result of the loss of access" thereto from
    the closed end of the street, did not show that there had been "special
    and peculiar" injury to the property within G. L. c. 79, § 12 [223–224,
    225]; CUTTER, J., dissenting.

PETITION filed in the Superior Court on August 30, 1960.

The case was tried before *Quirico,* J.

*Max Kabatznick* (*Edwin C. Hamada* with him) for the
petitioner.

*Max C. Goldberg* for the respondent.

SPIEGEL, J.    This is a petition for assessment of damages
under G. L. c. 79.    The jury viewed the locus.    Upon con-

clusion of the petitioner's opening statement the court allowed a motion by the respondent for a directed verdict "upon the pleadings and the opening," to which the petitioner excepted.

When a verdict for the respondent is directed upon the pleadings and the opening statement, the "facts set forth in the opening must be considered as true and in the light most favorable" to the petitioner. *Aragona* v. *Parrella,* 325 Mass. 583, 584. *Cohen* v. *Suburban Sidney-Hill, Inc.* 343 Mass. 217. In his opening to the jury, counsel for the petitioner stated the petitioner's claim substantially as follows: "Petitioner is the owner of the premises numbered 17–19 and 21–23 Ferry Street. The building numbered 21–23 is occupied by the petitioner. The building numbered 17–19 is vacant. Prior to the taking of the area near the property owned by the petitioner and prior to the time that two walls were constructed as part of the entrance to . . . [a] tunnel petitioner's father conducted the business upon the premises numbered 21–23 Ferry Street. Petitioner has conducted this business for approximately nine years prior to the commencement of this action. Some time during September, 1959, the respondent commenced construction of the opening for the tunnel. Up to that time the petitioner's business had been conducted in the usual manner in which it had theretofore been conducted. Prior to the construction of the entrance to the tunnel, Ferry Street was a through street open on either end, and the petitioner conducted a meat and provisions business upon the above premises. Prior to the construction of the walls, access to petitioner's property was open from either end of Ferry Street. Trucks and cars would drive up to the property and an established number of customers would come to purchase merchandise on credit and/or on a cash and carry basis. The flow of business was constant until some time after the respondent began to erect the approach walls and opening of the tunnel. Once construction of these walls had begun, petitioner noticed a marked decline in the volume of business she was doing and also in the profit from that business.

The decline began at the time that access to Ferry Street from the north was cut off by the commencement of the erection of the walls. Trucks and cars would no longer enter Ferry Street. Once having entered Ferry Street, the only means of egress was to back up the length of the street to Fulton Street. As a result of the loss of access to petitioner's property from the northerly end of Ferry Street the value of the two buildings substantially declined. Through a real estate expert and through other testimony, the fair market value of the two properties after the walls had been erected would be shown to have been substantially reduced.''

The record is devoid of any description of what the jury saw in their view and is also devoid of a number of alleged facts stated in the petitioner's brief. For example, the petitioner asserts, ''Ferry Street is very narrow and the way in the road is no more than 15 feet from curb to curb. It is similar to most every street in that part of the city [the North End], in that the sidewalks are very narrow, the buildings are placed near the line of the street, and the ways in the roads are very narrow.'' We do not take judicial notice of the width of streets and sidewalks in the North End of Boston, for, by doing so, we should logically take notice of the width, and perhaps the length, of every street in the Commonwealth. The petitioner also states in her brief: ''The jury could have concluded that, once a motor vehicle had driven to the petitioner's premises, it could leave only by backing the length of the street [Ferry Street] to Fulton Street and then backing into and through the intersection and around the corner, and thereby violating the law.'' There is nothing in the record to indicate that it is illegal to back into a through street from a dead-end side street. This is not a matter for judicial notice.

The petitioner contends that the ''direction of a verdict for the respondent upon the pleadings and the opening was reversible error . . . since the respondent was bound by its stipulation in a pre-trial order that the 'pleadings are complete.' '' We reject this contention. We are of opin-

ion that the stipulation regarding the pleadings meant only that the parties had agreed that all procedural steps preparatory to trial had been taken. See *General Motors Corp.* v. *Blevins,* 144 F. Supp. 381, 389. It is the rule in this Commonwealth that "[i]f the opening plainly fails to show a cause of action, a verdict may be ordered." *Aragona* v. *Parrella,* 325 Mass. 583, 584.

Since the petitioner's property was not taken, the petitioner may recover damages for any injury which she may have suffered as a result of the respondent's acts only when that injury is "special and peculiar" within the meaning of G. L. c. 79, § 12.[1] We are satisfied that as to the type of damage suffered by this petitioner, the law in this Commonwealth is clear. "By reason of the discontinuance of the street within the location of the railroad, the petitioners, in order to cross the railroad, are obliged to go back on Ferry Street and pass around up the new street and over a bridge. If they suffer damages by reason of the discontinuance of Ferry Street . . . their damage is not special and peculiar, but is the same in kind as that of the general public, although it may be relatively great in degree. It is well settled that there can be no recovery for such damage." *Hyde* v. *Fall River,* 189 Mass. 439, 440.

We are of opinion that the cases cited by the petitioner are distinguishable on their facts from the case at bar. Even the case of *Wine* v. *Commonwealth,* 301 Mass. 451, which we think closest in analogy to the instant case is clearly distinguishable. In that case the highway on which the petitioner operated a gasoline filling station *was entirely closed to traffic.* Although we held that the damage to the petitioner's business as a result of the closing was special and peculiar, we do not believe that the rule can be applied to the situation where the street on which the petitioner's property is located was closed only at one end.

*Exceptions overruled.*

---

[1] The relevant part of this statute reads: "In determining the damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel . . . ."

CUTTER, J. (dissenting)    Because a verdict was directed upon the petitioner's opening before any testimony was heard, the record describes Ferry Street and the neighborhood only in somewhat general terms.[1] Except as the quotations from the opening in the majority opinion show, the petitioner did not include in her bill of exceptions, as would have been appropriate, a description of what the jury saw on their view.   See *Keeney* v. *Ciborowski*, 304 Mass. 371, 373–374.   Apart from the general inference mentioned below, there is thus no basis in the record for the detailed statements in the petitioner's brief (1) that "Ferry Street is very narrow and the way in the road is no more than 15 feet from curb to curb," and (2) "that the sidewalks are very narrow [and] the buildings are placed near the line of the street."   Nevertheless, upon the facts stated in the majority opinion (especially the circumstance that trucks entering Ferry Street had to back out after the northerly end of the street was closed), it is reasonable to infer that Ferry Street is one of the narrow streets in the North End of Boston.   In any event the opening clearly states that after the taking, "Trucks and cars would no longer enter Ferry Street.   Once having entered Ferry Street, the only means of egress was to back up the length of the street to Fulton Street."

Our cases have been strict in confining the award of damages, in eminent domain cases and in cases of discontinuances of highways, to owners of land (a) actually taken in whole or in part, or (b) which has suffered some "special and peculiar" injury, not the same in kind as that suffered by the general public.   See *Hyde* v. *Fall River*, 189 Mass. 439, 440.[2]   See also G. L. c. 79, § 12, as amended through

[1] The jury had taken a view prior to the opening, so they had some knowledge of the area.   See *Keeney* v. *Ciborowski*, 304 Mass. 371, 372; *Kairis* v. *Board of Appeal of Cambridge*, 337 Mass. 528, 531.   See also G. L. c. 234, § 35.   Although the petition referred to a recorded plan of the taking, the plan was not submitted with the bill of exceptions.   It is assumed that the plan has not been sufficiently incorporated by reference to be a part of the record.

[2] The cases are collected in Nichols, Eminent Domain (3d ed.), § 6.42[5]. See *Smith* v. *Boston*, 7 Cush. 254, 255–257 (instruction approved that the petitioner could recover no damages because of a street discontinuance where his land did not abut on the portion of the street so discontinued, subject to a

St. 1953, c. 634, § 1 (later amended by St. 1959, c. 626, § 4);
G. L. c. 82, § 7 (as amended through St. 1933, c. 283, § 2),
and § 12. For damage, not "special and peculiar," the language of the *Hyde* case would not permit recovery, even if
the petitioner's injury "may be relatively great in degree"
as compared with that of the general public. This is a
harsh rule for it seems to impose upon seriously hurt individual landowners (whose land is not actually taken) a substantial and greatly disproportionate part of the real cost
of a public improvement, supposedly of benefit to the community as a whole. Indeed, some other jurisdictions seem
to have adopted a rule that may be more equitable under
modern conditions. See Nichols, Eminent Domain (3d ed.)
§ 6.32[2], pp. 424–425.

Even giving our harsh rule its full scope, it has no fair
application here. The petitioner, upon the inference which
I draw from the opening, has been deprived of all reasonably convenient access to her property. In 1964 reasonable
access to property adapted for use in the meat and provisions business requires that trucks and other motor vehicles
shall be able to approach the property in a normal manner
and that they shall not be forced to resort to the clumsy
operation of backing up or down a narrow street. The conversion of this narrow through street into a dead-end street
means that a normal forward entrance to the street or forward departure from it in a truck no longer will be possible,
unless a turn around space is provided, or unless, as in the

---

caveat at p. 257); *Castle* v. *County of Berkshire,* 11 Gray, 26; *Stanwood* v.
*Malden,* 157 Mass. 17, 19 (quoted later in this opinion); *Nichols* v. *Richmond,*
162 Mass. 170, 172–173 (apparently a longer and less convenient route, but
still an adequate route, remained in existence); *Natick Gas Light Co.* v. *Natick,*
175 Mass. 246, 252 (a diminution in the value of land does not give rise to an
award of damages, "if it is caused merely by lessening the convenience of
approach, if the land is still *freely accessible* by public ways" [emphasis supplied]). See also *Spaulding* v. *Nourse,* 143 Mass. 490, 494–495 (narrowing
of way not shown to have been inadequate thereafter); *Davis* v. *County
Commrs. of Hampshire,* 153 Mass. 218, 222–223 (which states that "if all
access to an estate by public streets is cut off, the rule might not apply");
*Hammond* v. *County Commrs. of Worcester,* 154 Mass. 509, 511; *Wine* v. *Commonwealth,* 301 Mass. 451, 458. Cf. *F. F. Woodward Co.* v. *Fitchburg,* 236
Mass. 364, 369 (all access cut off). Cf. also *Eaton* v. *Locke,* 202 Mass. 324,
325 (no private proceeding to enforce a public right); *Nichols* v. *Commonwealth,* 331 Mass. 581 (limited access way); *Wenton* v. *Commonwealth,* 335
Mass. 78, 80–81 (same); *Parrotta* v. *Commonwealth,* 339 Mass. 402, 405
(same).

*Hyde* case (189 Mass. 439), where the street was "forty feet wide," it is possible for vehicles to make a U-turn, an operation not ordinarily feasible in downtown Boston where parked vehicles usually impede or prevent such action.[3]

At least one case, applying the harsh Massachusetts rule, seems to have recognized that substantial impairment of "access to the system of public streets" may be material. See Holmes, J., in *Stanwood* v. *Malden,* 157 Mass. 17, 19, where, in denying recovery of damages for a street discontinuance, the opinion states the rule: "The proposition on which *Smith* v. *Boston* [see fn. 2, *supra*] was decided was, that, to lay a foundation under our statute for a claim of damages for discontinuing a highway, it is not enough to show that a shop has suffered by the diversion of travel, or that the owner finds travel less convenient at a distance from his place, if the access to the system of public streets remains *substantially unimpaired*" (emphasis supplied). See also *Natick Gas Light Co.* v. *Natick,* 175 Mass. 246, 252 (fn. 2, *supra*).

It seems to me that the present petitioner's access to other public streets has been very substantially impaired. She can get to other streets only by backing vehicles on Ferry Street in one direction or the other. Backing a motor vehicle from a side street into a through street is likely to be inconvenient, difficult, and dangerous, if not also illegal. It is unrealistic to say in 1964 that the petitioner still has reasonable access to her land,[4] or that she has suf-

---

[3] Many of the cases cited in fn. 2, *supra*, were decided prior to 1905, when *Hyde* v. *Fall River,* 189 Mass. 439, was decided. The facts of the later cases do not closely resemble the present situation. In 1905, motor traffic had hardly begun. There then was slight occasion to leave horsedrawn vehicles standing for unreasonably long periods in business areas. Our citizens had not then encountered the practical problem of controlling the nuisance of improper parking of vehicles which today so often impairs the easement of travel over city streets. See *Loosian* v. *Goudreault,* 335 Mass. 253, 255–256.

[4] The effect of the majority decision is that the application of the harsh Massachusetts rule to a person in the position of this petitioner can be cured only by remedial legislation, despite the vast change of circumstances since the rule was first stated. Cf. *Vigeant* v. *Postal Tel. Cable Co.* 260 Mass. 335, 342–343. Compare also the overruling of the somewhat related decisional rule laid down in *Rand* v. *Boston,* 164 Mass. 354, by later decisions discussed in *Howell* v. *New York, N. H. & H. R.R.* 221 Mass. 169, 171–172.

fered only damage that "is the same in kind as that of the general public, although it may be relatively great in degree." See the *Hyde* case, 189 Mass. 439, 440. Her damages are "special and direct as distinguished from remote and consequential." See the *Wine* case, 301 Mass. 451, 458 (fn. 2, *supra*). All those owners on Ferry Street (cf. *Webster Thomas Co.* v. *Commonwealth,* 336 Mass. 130, 138), whose access to their property has been limited in fact in the same manner as access to the petitioner's property has been, have suffered injury to which no other members of the public have been subjected. The character of such owners' access to the general street system has been fundamentally altered and has become commercially inadequate.[5]

It is not necessary, in order to deal fairly with persons in the position of the petitioner, to rule that all victims of takings and highway discontinuances, whose properties suffer damage greatly disproportionate to that of other members of the general public, shall be entitled to recover damages. This case merely raises the question whether such a victim whose property is left with submarginal access to the general street system shall receive fair redress, or is to have her property taken, in a very real sense, without just compensation.

*Hyde* v. *Fall River,* 189 Mass. 439, dealt with a street forty feet wide. The statement in the opening in the present case, that "the only means of egress [from Ferry Street] was to back up the length of the street," may be a sufficient distinction of fact between the *Hyde* case and the present case to make it unnecessary in this case to overrule the first point decided in the *Hyde* case (at p. 440), even if the majority were to adopt the view, which I urge, that reduction of the quality of access to property below the standard of reasonable, normal convenience necessarily constitutes special and peculiar damage. If this distinction is

---

[5] The general public suffers little if at all, for any occasion for use of Ferry Street by the general public for ordinary travel has been removed entirely, and members of the public suffer no inconvenience, except on the rare occasions when they may have cause to visit premises on the street.

regarded as insufficient, then I believe that the first point decided in the *Hyde* case should be overruled or modified, much in the manner that the second part of the *Hyde* case (pp. 440–442) effected, or at least recognized, the modification or overruling of *Rand* v. *Boston,* 164 Mass. 354.

I would sustain the exceptions.