TOWN OF SHREWSBURY *vs.* GEORGE L. MUNRO, JR.

Worcester. May 21, 1974. — June 14, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Municipal Corporations,* Municipal electric plant. *Statute,* Construction. *Words,* "Company."

G. L. c. 166, § 39, does not apply to a municipality owning a municipal electric plant. [363-365]
Review of the predecessors of G. L. c. 166, §§ 38, 39. [365-367]

CONTRACT. Writ in the Central District Court of Worcester dated October 8, 1969.

Following trial in the District Court and removal to the Superior Court, the action was heard by *Beaudreau,* J.

*James F. Bergin,* Town Counsel, for the town of Shrewsbury.
*Richard J. McCarthy* for the defendant.

GRANT, J.   This is an action on a count in quantum meruit brought by the plaintiff town to recover the costs incurred by its municipal light department in temporarily removing electric wires at the request of the defendant in order to make it possible for him to move a building through certain public ways of the town.   The plaintiff had a finding in a District Court, whereupon the defendant removed the action to the Superior Court (G. L. c. 231, § 104, as amended through St. 1965, c. 377), where it was submitted on a statement of agreed facts which we shall treat as a case stated.   A judge of the latter court entered an order for judgment for the defendant, and the plaintiff appealed.

The only defence to the action which has been argued before us is that the plaintiff is barred from recovery because the provisions of G. L. c. 166, § 39 (as amended by St. 1958, c. 130),[1] impose a statutory duty on the plaintiff's municipal light department (and thus on the town itself) to remove electric wires at the town's expense.   We hold that the provisions of that section do not apply to a city or town owning a municipal electric plant.

1. We first reach that result by the application of long familiar rules of statutory construction.   It has been

---

[1] "Whenever, in order to move a building or for any other necessary purpose, a person desires that the wires of *any such company* be cut, disconnected or removed, the *company* shall forthwith cut, disconnect or remove the same, if the person desiring this to be done has first left a written statement, signed by him, of the time when, and the place, described by reference to the crossings of streets or highways, where he wishes to remove said wires, at the office of the *company* in the city or town where such place is situated, seven days before the time so stated, or, if there is no such office, if he has deposited such statement in the post office, postage prepaid, and directed to the *company* at its office nearest to said place, ten days before the time mentioned in said statement.   If the *company* neglects or refuses to cut, disconnect or remove wires, as hereinbefore provided, the inspector of wires, or the selectmen of a town having no such inspector, may cause the same to be cut, disconnected or removed, and the city or town may recover of the *company* in contract the expense of so doing" (emphasis supplied).

repeatedly held or considered that a word such as "company," which is employed no less than six different times in G. L. c. 166, § 39, is not to be construed to include a municipality owning an electric plant in the absence of a clear expression of legislative intent that it shall be so construed. See *Donohue* v. *Newburyport,* 211 Mass. 561, 566-569 (1912); *O'Donnell* v. *North Attleborough,* 212 Mass. 243, 245-246 (1912); *MacRae* v. *Selectmen of Concord,* 296 Mass. 394, 396-397 (1937); *Howard* v. *Chicopee,* 299 Mass. 115, 121-122 (1937); *Taunton* v. *Commissioner of Corps. & Taxn.* 359 Mass. 188, 190-191 (1971). See also G. L. c. 164, § 2.

It seems to us that such a rule of construction is required in the present case. The words "any such company" which appear near the outset of the first sentence of § 39 refer to the immediately preceding provisions of G. L. c. 166, § 38,[2] where "any city or town engaged in the manufacture and sale of electricity for light, heat or power" is referred to disjunctively with and in contradistinction to "any street railway company . . . any electric railroad company . . . or any company . . . described in . . . [section] twenty-one." Section 38 does not use the word "company" when referring to a city or town which owns an electric plant, and we are not at liberty to assume that the Legislature intended that word to have different meanings in two successive sections of

---

[2] "Whoever unlawfully and intentionally injures, molests or destroys any line, wire, pole, pier or abutment, or any of the materials or property of any *street railway company,* of any *electric railroad company,* or of *any city or town engaged in the manufacture and sale of electricity for light, heat or power* or of any *company,* owner or association *described in sections twenty-one and forty-three* shall be punished . . ." (emphasis supplied). The companies described in § 21 include those "incorporated for the transmission of intelligence by electricity or by telephone . . . or for the transmission of electricity for lighting, heating or power, or for the construction and operation of a street railway or an electric railroad." Section 43 provides: "Owners and associations engaged in the business specified in section twenty-one although not incorporated shall be subject to this chapter so far as applicable."

statutory provisions dealing with the same subject matter. Compare *Insurance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184, 188-189 (1969).

We note also a serious anomaly which would result from construing the word "company" as used in § 39 to include a municipal electric plant; if a municipal electric department wrongfully refused to remove wires, an inspector of wires or a board of selectmen could cause the wires to be removed and the city or town could then proceed against itself under the second sentence of that section to recover the expense of removal. We cannot believe any such result was intended, but such would appear to be a logical consequence of the construction contended for by the defendant in this case.

We conclude as matter of simple statutory construction that the provisions of G. L. c. 166, § 39, as amended, do not apply to a municipally owned electric plant.

2. Support for that conclusion is found in the legislative history of the provisions now found in G. L. c. 166, §§ 38 and 39. The earliest version of what is now § 38 appears to have been St. 1849, c. 93, § 7, which, when read together with § 1 of c. 93, applied only to telegraph companies. That § 7 was carried in 1860, without significant change, into Gen. Sts. c. 64, § 15. The earliest ancestor of G. L. c. 166, § 39, is St. 1869, c. 141, § 1, which likewise applied only to telegraph companies. That section authorized persons desiring to move buildings to disconnect wires themselves; it contained nothing comparable to what is now the second sentence of G. L. c. 166, § 39. The 1869 statute was not made part of the General Statutes, despite its obvious interrelationship to Gen. Sts. c. 64, § 15. It was not until the enactment of the Public Statutes in 1882 that the provisions of Gen. Sts. c. 64, § 15, and of St. 1869, c. 141, § 1, were juxtaposed as Pub. Sts. c. 109, §§ 16 and 17, respectively.

By St. 1883, c. 221, § 1, "All provisions of law granting to persons and corporations authority to erect, lay and maintain . . . telegraph and telephone lines" were,

with certain exceptions, made applicable "to lines for the transmission of electricity for the purpose of lighting." One of the exceptions was Pub. Sts. c. 109, § 16, which has already been identified as a forerunner of G. L. c. 166, § 38.[3] What had been Pub. Sts. c. 109, §§ 16 and 17, were carried without material change into R. L. c. 122, §§ 27 and 28, respectively. Both those sections were, by virtue of R. L. c. 122, § 1, made applicable to electric light and power companies as well as to telephone and telegraph companies. There is nothing in the legislative history of R. L. c. 122, §§ 27 and 28, to suggest that either section was intended to apply to any wires other than those owned by private companies or unincorporated owners. To the contrary, it was said in Vol. II of the Report of the Commissioners for Consolidating and Arranging the Public Statutes (1901), at p. 1160, that the sections ultimately enacted in 1902 as R. L. c. 122, §§ 25-30, "have been so drafted to include all *companies* which by amendments have been brought within Pub. Sts. c. 109 . . ." (emphasis supplied).

It is in St. 1908, c. 233 ("An Act to extend the provisions of . . . [R. L. c. 122, § 27] to street railway companies, electric railroad companies and municipalities engaged in the manufacture and sale of electricity . . ."), that we find the first use of the phrase "any city or town engaged in the manufacture and sale of electricity" which is now found in G. L. c. 166, § 38. No change was made in 1908 in the provisions of R. L. c. 122, § 28. The latter section was amended by St. 1911, c. 509, § 6,

---

[3] No such exception was made with respect to Pub. Sts. c. 109, § 17, a forerunner of G. L. c. 166, § 39. In *A. M. Richards Bldg. Moving Co.* v. *Boston Elec. Light Co.* 188 Mass. 265, 267 (1905), it was held that the 1883 statute had made a privately owned electric company subject to the provisions of Pub. Sts. c. 109, § 17. Cities and towns were not generally authorized to construct or acquire electric plants until the enactment of St. 1891, c. 370.

in respects not important for present purposes.[4]  The provisions of R. L. c. 122, §§ 27 and 28, each as so amended, were carried directly to G. L. c. 166, §§ 38 and 39, respectively.[5]

The significance of the foregoing exposition lies in the fact that ever since the juxtaposition in the Public Statutes of 1882 of the predecessors of G. L. c. 166, §§ 38 and 39, the scope of the predecessors of § 39 has been defined by and limited to "any such company."  The fact that the quoted phrase has remained unchanged in the ensuing period of more than ninety years (during which other changes have been effected in both of what are now G. L. c. 166, §§ 38 and 39) is, we believe, persuasive evidence that what is now G. L. c. 166, § 39, was never intended to be extended to apply to a municipally owned electric plant which is separately and expressly referred to as such in what is now G. L. c. 166, § 38. Compare *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxn.* 363 Mass. 685, 691-692 (1973).

3. Although it was not discussed in either of the briefs, we have considered the possibility that the provisions of G. L. c. 164, §§ 66 and 71, might have the effect of making the provisions of G. L. c. 166, § 39, applicable to a municipal electric plant.  Section 71 of G. L. c. 164 is not one of the sections expressly referred to in the second clause of § 2 of that chapter.  Compare *Board of Gas & Elec. Light Commrs. of Middleborough* v. *Department of Pub. Util.* 363 Mass. 433, 437-438 (1973).  We have concluded from an examination of the legislative history of G. L. c. 164, §§ 2, 66, and 71, that §§ 66 and 71 have

---

[4] The 1911 amendments added what is now the second sentence of G. L. c. 166, § 39, and replaced the right of self-help in persons desiring the removal of wires with a duty on the part of the owners thereof to remove them.

[5] The amendments of § 39 which were effected by St. 1958, c. 130, are not here material.

no bearing on the application or proper construction of
G. L. c. 166, § 39.[6]

The order for judgment is reversed, and the case is to
stand for further proceedings in the Superior Court not
inconsistent with this opinion.

*So ordered.*

---

[6]See St. 1891, c. 370, § 17; R. L. c. 34, § 30; Res. 1912, c. 51;
1913 House Doc. No. 1925, pp. 4-5, 69-70, 71, 89; 1913 Senate Doc.
No. 581, pp. 42, 43, 68; 1914 Senate Doc. No. 129, pp. 41, 42, 67;
1914 House Doc. No. 103, pp. 4-5; 1914 Senate Journal, p. 1274;
1914 Senate Doc. No. 575, pp. 43, 44, 69; St. 1914, c. 742, §§ 123,
127, and 198; G. L. c. 164, §§ 2, 66, and 71.