WILLIAM J. CASEY *vs*. MASSACHUSETTS ELECTRIC COMPANY.

Essex.   March 9, 1984. — August 23, 1984.

Present: WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Administrative Law,* Primary jurisdiction.  *Statute,* Construction.  *Electric Company.  Words,* "Wires."

Where the issue in an action for declaratory relief was one of statutory construction and turned on questions of law which had not been committed to the discretion of an administrative agency, the action was appropriately commenced without prior resort to proceedings before the agency. [879-880]

General Laws c. 166, § 39, requiring that an electric utility company bear the expenses of temporarily removing its wires to facilitate the relocation of a house, did not oblige the company to assume costs of removing its poles or other equipment for this purpose. [880-882]

An electric utility company was under no common law duty to bear the entire cost of removing its equipment from a public way in order to facilitate the relocation of a privately owned house for a purely private purpose. [882-883]

CIVIL ACTION commenced in the Superior Court Department on January 3, 1983.

Questions of law were reported to the Appeals Court by *Bennett,* J. The Supreme Judicial Court ordered direct review on its own initiative.

*Robert L. Marder* for the plaintiff.

*Nicholas J. DeNitto (Janis A. Callison* with him) for the defendant.

ABRAMS, J. The plaintiff, William J. Casey, sought a judgment declaring that, pursuant to G. L. c. 166, § 39,[1] the defend-

---

[1] General Laws c. 166, § 39, as amended by St. 1958, c. 130, provides: "Whenever, in order to move a building or for any other necessary purpose, a person desires that the wires of any such company be cut, disconnected or removed, the company shall forthwith cut, disconnect or remove the same, if the person desiring this to be done has first left a written statement, signed by him, of the time when, and the place, described by reference to

ant, Massachusetts Electric Company (company), is obliged to assume certain costs, including the cost of temporary removal of its poles, to permit the plaintiff to relocate his home within the city of Lynn. G. L. c. 231A, § 2. A judge of the Superior Court reported four questions to the Appeals Court on a statement of agreed facts. See G. L. c. 231, § 111, third par.; Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We transferred this case to this court on our own motion. We conclude that the company must bear the expenses of the cutting or removal of its "wires" but not the additional expenses incurred in the temporary removal of its poles in order to permit the plaintiff's home to be moved. We also determine that the principles of primary jurisdiction do not require a reference to the Department of Public Utilities (D.P.U.) in order to obtain a construction of the statute. A declaration of the rights of the parties consistent with this opinion should be entered in the Superior Court. See *Attorney Gen.* v. *Kenco Optics, Inc.,* 369 Mass. 412, 418 (1976).

The plaintiff is the owner of several parcels of real estate located in the city of Lynn. This controversy arose out of his recent efforts to transport a single family house from one of those lots to another.[2]

---

the crossings of streets or highways, where he wishes to remove said wires, at the office of the company in the city or town where such place is situated, seven days before the time so stated, or, if there is no such office, if he has deposited such statement in the post office, postage prepaid, and directed to the company at its office nearest to said place, ten days before the time mentioned in said statement. If the company neglects or refuses to cut, disconnect or remove wires, as hereinbefore provided, the inspector of wires, or the selectmen of a town having no such inspector, may cause the same to be cut, disconnected or removed, and the city or town may recover of the company in contract the expense of so doing."

The companies within § 39 are defined in G. L. c. 166, § 38, to include "any company, owner or association described in sections twenty-one and forty-three." The companies described in G. L. c. 166, § 21, include those "incorporated . . . for the transmission of electricity for lighting, heating or power." *Shrewsbury* v. *Munro,* 2 Mass. App. Ct. 362, 364 & n.2 (1974).

[2] Our recitation of the facts is derived principally from the statement of agreed facts incorporated in the report. Where necessary, this has been supplemented by reference to additional, undisputed facts provided in the parties' briefs and at oral argument.

The plaintiff's plan for the house relocation contemplated that it be moved over Lynn public ways a distance of approximately one and one-half miles. In order for the house to pass unobstructed through the streets, it is necessary that certain overhead electric transmission and distribution lines be temporarily removed. Thus, wires and cables would have to be disconnected. Utility poles also would have to be removed and replaced with temporary structures during the move.

The plaintiff asked the company, which provides electric service to Lynn residents, to perform the necessary work on its lines. The company responded that it would bear the cost of cutting and removal of the wires, but that the plaintiff would have to pay a $15,000 fee before it would move the poles. The plaintiff then served the company with formal notice under G. L. c. 166, § 39, demanding that the company assume all costs related to the temporary removal of its lines.

The company estimated the total cost of the work necessary to permit the house relocation to be approximately $35,000. Of this amount, $20,000 is attributed to expenses directly related to the cutting and removal of wires. The company does not dispute liability for the $20,000 amount. The remaining $15,000, for which the company seeks reimbursement, is ascribed to the projected cost of engineering work to survey the proposed route, temporary construction of pole replacement and associated labor costs.[3] The judge reported four issues.[4]

---

[3] The plaintiff does not dispute the company's allocation of costs.

[4] The judge reported the following questions: whether (1) the doctrine of primary jurisdiction required the plaintiff to seek an advisory ruling under G. L. c. 30A, § 8, by the D.P.U. prior to obtaining judicial relief; (2) G. L. c. 166, § 39, requires that the company bear all costs incurred to remove temporarily its equipment to allow plaintiff's house to be moved, or only those expenses relating to the cutting or removal of wires; (3) a requirement that the company bear costs associated with moving a privately owned building effects a taking of company property without compensation, in violation of Federal and Massachusetts due process guaranties; and (4) G. L. c. 166, § 39, as construed by the Appeals Court in *Shrewsbury* v. *Munro,* 2 Mass. App. Ct. 362, 363 (1974), is violative of Federal and Massachusetts equal protection principles in that it places the financial burden of facilitating

1. *Primary jurisdiction.* The company disputes the appropriateness of declaratory relief. It asserts that the doctrine of primary jurisdiction requires that this matter be referred to the D.P.U. for an advisory ruling. See G. L. c. 30A, § 8. The company argues that "matters pertaining to electric utilities are uniquely the province of the DPU," contending that "the DPU is uniquely able to understand the issue of allocation of house moving costs . . . and . . . the larger regulatory structure." Thus, the company concludes "[this matter should be] considered by the DPU . . . even if the DPU is unable to provide relief." We do not agree.

In this case, "[n]o exclusive statutory remedy precludes declaratory relief concerning this controversy." *Metropolitan Dist. Police Relief Ass'n* v. *Commissioner of Ins.,* 347 Mass. 686, 689 (1964). See *New England Power Co.* v. *Selectmen of Amesbury,* 389 Mass. 69, 70 n.4 (1983); *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 76 (1982). The issue is one of statutory construction. Well established is the principle that "[t]he duty of statutory interpretation is for the courts." *Cleary* v. *Cardullo's Inc.,* 347 Mass. 337, 344 (1964).

We add that the doctrine of primary jurisdiction requires prior resort to an administrative agency "where that procedure would secure '[u]niformity and consistency in the regulation of business entrusted to a particular agency,'" or "when the issue involves technical questions of fact uniquely within the expertise and experience of an agency." *Nader* v. *Allegheny Airlines,* 426 U.S. 290, 303-304 (1976), quoting *Far East Conference* v. *United States,* 342 U.S. 570, 574-575 (1952). See *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 221 (1979). The doctrine "does not apply, however, when the issue in controversy turns on ques-

---

house moves upon private electric companies, but not on municipally-owned electric utilities.

Because our interpretation and application of G. L. c. 166, § 39, results in the resolution of this dispute, it is not necessary to consider the two constitutional issues. See *Duro* v. *Duro, ante* 574 n.1 (1984); *Fazio* v. *Fazio,* 375 Mass. 394, 405 (1978), citing *Commonwealth* v. *Bartlett,* 374 Mass. 744, 748-749 (1978). See also *Beeler* v. *Downey,* 387 Mass. 609, 613-614 & n.4 (1982).

tions of law which have not been committed to agency discretion." *Id.* at 221-222.

2. *Construction of § 39.* General Laws c. 166, § 39, as amended by St. 1958, c. 130, provides that if a person seeking to move a building over public ways needs the "wires" of a utility company "cut, disconnected or removed, the company shall forthwith cut, disconnect or remove the same" if such person has first served the company with timely notice of the location of the wires and the time at which the person wants the wires removed. Section 39 further provides that if the company neglects or refuses to cut or remove its wires after a proper request has been made, "the inspector of wires, or the selectmen of a town having no such inspector" may remove the wires and recover of the company the cost of so doing.

The plaintiff asserts that the word "wires" in § 39 is generic and embraces all equipment used to transmit electricity along or across the public ways. "The difficulty with this argument is that it overlooks a salient principle of statutory construction, namely, that the statutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). "[S]tatutory language, when clear and unambiguous, must be given its ordinary meaning." *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 704 (1984). *Hashimi* v. *Kalil,* 388 Mass. 607, 610 (1983).

It is clear that the ordinary, lexical meaning of the term "wire"[5] does not include support structures used in the transmission or distribution of electricity. In other words, "wire" ordinarily does not mean "pole." Unless legislative usage of the word "wire" indicates that it has "acquired a peculiar and appropriate meaning in law," we ascribe to the Legislature an intent to use the term in its ordinary sense. See G. L. c. 4, § 6, Third. See also *Corcoran* v. *S.S. Kresge Co.,* 313 Mass. 299, 303 (1943).

---

[5] A "wire" is "a thread or slender rod" made of metal, "usually very flexible, and circular in cross section." Webster's New Int'l Dictionary 2936 (2d ed. 1959). When used for electric supply, wires typically are coated with insulating material, see 220 Code Mass. Regs. § 125.26 (1978), and are suitable for carrying an electric current, see 220 Code Mass. Regs. § 125.40 (2) (1978).

We also look to the entire statutory scheme to determine the meaning of the word "wires" since "statutes in the same field are to be construed together, if possible, so as to form an harmonious whole." *Mercy Hosp.* v. *Rate Setting Comm'n,* 381 Mass. 34, 40 (1980). See *Negron* v. *Gordon,* 373 Mass. 199, 201 (1977). General Laws c. 166, § 21F, inserted by St. 1969, c. 882, in defining terms states that "temporary relocation" shall mean "removing" or "elevating" electrical conductors from poles.[6] General Laws c. 166, § 38, provides penalties for the unlawful injury or destruction of "any line, wire, pole, pier or abutment, or any of the materials or property of" a utility company.[7] Thus, the term "wire" is used to indicate only one type of utility company equipment, rather than as a generic term throughout G. L. c. 166.[8]

The plaintiff's contention that such a reading "result[s] in a tortured non-sensical interpretation of the statute" is without merit. The Legislature well could have believed that the company should bear the cost of cutting the wires but need not bear the cost of moving lawfully located poles, which could become very costly for the company and its customers.[9]

We also note that an earlier version of § 39, St. 1869, c. 141, § 1, permitted persons desiring to move a building to "cut or otherwise disconnect the wires of any telegraph company, or to remove them *from the poles or fixtures to which they are attached*" (emphasis supplied).[10] Nothing in the sub-

---

[6] These definitions are specifically concerned with G. L. c. 166, §§ 21A-21E. Nevertheless, they indicate a legislative awareness that the word "wire" does not include "pole."

[7] For a discussion of the interrelationship and parallel development of the provisions now set forth in G. L. c. 166, §§ 38 and 39, see *Shrewsbury* v. *Munro,* 2 Mass. App. Ct. 362, 364-367 (1974).

[8] See, e.g., G. L. c. 166, §§ 21, 22, 22A-22I, 23, 24, 25A, 30, 31, 32, 33, 35, 36, 37, 38, 41 and 42.

[9] The plaintiff relies on *A.M. Richards Bldg. Moving Co.* v. *Boston Elec. Light Co.,* 188 Mass. 265 (1905). That case, however, concerned costs associated with the cutting of wires, not the removal of poles, and thus is inapplicable.

[10] The emphasized language was omitted as superfluous by the commissioners responsible for the consolidation of statutes in the Public Statutes of

sequent version of this provision suggests that it should now be construed differently from the earlier enactment. We conclude that the defendant need not bear the costs associated with the temporary removal of its poles or other support structures.

3. *Common law*. The plaintiff argues that the company is under a common law duty to bear the entire cost of removing its equipment from a public way whenever necessary to allow passage of a building along that route.[11] Relying on *Norfolk Redevelopment & Hous. Auth.* v. *Chesapeake & Potomac Tel. Co.*, 464 U.S. 30 (1983), the plaintiff contends that the common law has not been repealed, and that regardless of G. L. c. 166, § 39, the company must bear the entire cost of his house move. We do not agree.

In the *Norfolk* case, a telephone company sought compensation from the local government agency responsible for an urban renewal plan which required the telephone company to relocate some of its transmission facilities. *Id*. at 31-32. In considering whether a Federal statute entitled the telephone company to such compensation, the Court noted that "[u]nder the traditional common law rule, utilities have been required to bear the entire cost of relocating from a public right-of-way whenever requested to do so *by state or local authorities*" (emphasis supplied). *Id*. at 35. See generally 4A Nichols, Eminent Domain § 15.22 (rev. 3d ed. 1981) (grant to utility of permit to use public way is subservient to public travel and to paramount police power). See *United Elec. Light Co.* v. *Deliso Constr. Co.*, 315 Mass. 313, 316 (1943); *Natick Gas Light Co.* v. *Natick*, 175 Mass. 246, 248-249 (1900). The short answer to the plaintiff's argument is that no public authority has

---

1882. Pub. Stats. c. 109, § 17. See Res. 1880, c. 46 (providing for consolidation; authorizing commissioners to "reject superfluous words").

[11] The plaintiff has raised an issue not included among the questions reported by the judge. Thus, this issue need not be considered on appeal. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977). However, since the company has responded to this argument without objection to its being raised, and because the result will not be changed by our consideration of the question, we shall state our views.

requested that the company move its facilities. Contrast *Natick Gas, supra* at 247-249 (utility company must bear cost of removing pipes when required to do so by city acting under statutory authority). The principles on which the plaintiff relies are therefore inapplicable to the present case.[12] Moving a privately owned house is an extraordinary use of the public ways for a purely private purpose. See, e.g. *Tandy* v. *Wichita,* 126 Kan. 103, 105 (1928); *Kibbie Tel. Co.* v. *Landphere,* 151 Mich. 309, 313-314 (1908); *Collar* v. *Bingham Lake Rural Tel. Co.,* 132 Minn. 110, 113 (1916); *Central Dist. & Printing Co.* v. *Davis,* 17 Pa. D. 1036, 1042 (1908).

Our answers to two of the reported questions are that the company is not under any obligation to assume the costs associated with the temporary removal of its poles to facilitate the plaintiff's house move, and that because the sole issue is one of statutory construction, the doctrine of primary jurisdiction is not applicable.

---

[12] We therefore do not reach Casey's argument that G. L. c. 166, § 39, has left the common law undisturbed. We note, however, that where "legislation has been enacted which seems to have been intended to cover the whole subject to which it relates, it . . . supersedes the common law." *Salisbury* v. *Salisbury Water Supply Co.,* 279 Mass. 204, 206 (1932). Section 39 appears to have been intended conclusively to delimit the extent to which house moving costs are to be imposed upon utility companies.