Forte, J.
This is an action in contract and tort which arose from the plaintiffs movement of a prefabricated house along the public ways in the City of Gloucester. The complaint against the defendant, Massachusetts Electric Company (“Mass. Electric”), is in four counts for interference with an advantageous contract, negligence, breach of contract and unfair and deceptive practices in violation of G.L.c. 93A
The defendant counterclaimed for the plaintiffs alleged breach of contract and violation of G.L.c. 93A.
The report states that, after trial:
[t]he court found for the plaintiff and found for the defendant on its counterclaim. The court then set off each parties’ [sic] damages and, therefore, ordered neither party to pay the other’s damages.
We interpret the trial judge’s action as a finding for the plaintiff and defendant on each count of their respective complaint and counterclaim which was intended by the court to be conclusive of each part of this action.
The reported evidence indicates that the plaintiff, Michael J. Horgan (“Horgan”), is a carpenter who sometimes acquires, restores and rents residential units in the Gloucester area. The plaintiff purchased a vacant lot on which he installed a house foundation and performed other necessary work in preparation for the placement on such lot of a two-story, prefabricated house. Plaintiff purchased this house from Gloucester Building Center where it was on display as a model home.
In accordance with G.L.c. 166, §39,[1] Horgan gave written notice to defendant Mass. Electric on April 24,1989 of his intended move of the house to the vacant lot, and *125 included therein the necessary dimensional data of the two-story structure and the precise street route to be followed. Although the plaintiffs notice did not specify a moving date, the defendant responded that it would need one month’s lead time to prepare the route, and the parties then agreed on a moving date three months hence of July 30,1989. Metropolitan Building Movers, a professional house moving firm, was engaged by the plaintiff to handle the move.
In addition to requesting one month’s lead time, Mass. Electric also demanded payment in advance of certain unexplained “engineering” or “construction” costs which it initially estimated at $12,000.00 and later reduced to $10,900.00. The plaintiff reminded the defendant that it had participated in the plaintiff s 1986 move of another house along Gloucester public streets by removing wires and transmission equipment without charge as it was required to do pursuant to G.L.c. 166, §39. The plaintiff also explained to Mass. Electric that he had measured the route and determined that the model house could be safely transported without any relocation of electric poles. Consistent with theposition it continued to maintain at all relevant times herein, Mass. Electric responded that it would not perform its statutory duty of dropping electric lines free of charge on the day of the scheduled move unless and until it received a $10,900.00 prepayment of costs for what it insisted was necessary preparation work along the route “to facilitate clearance of the house from our wires.”
A number of conferences were subsequently held between the plaintiff and a service representative of the defendant during which the defendant repeatedly refused, upon plaintiff s requests, even to itemize the charges for which it was seeking prepayment. The plaintiff engaged counsel who was unsuccessful in either negotiating Mass. Electric’s abandonment of its prepayment demands, or an accounting and explanation of its prepayment charges. Counsel ultimately notified the defendant in writing that its prepayment policy was illegal and in violation of G.L.c. 93A Three weeks prior to the scheduled move, Mass. Electric responded that if it did not
receive a check payable to Massachusetts Electric Company for the $10,900.00 prior to July 28, 1989 at noon, we will be unable to perform our work on the scheduled date of the move (July 30, 1989 at 6:00 AM.).
The defendant then notified Metropolitan Building Movers that Mass. Electric personnel would not be present to participate in the scheduled move. Metropolitan immediately cancelled the July 30th move and so notified the plaintiff.
Horgan believed Mass. Electric’s continuing representations that it would not prepare its wires for the move without the prepayment, but he was unable to raise the money and was also facing time constraints imposed by Gloucester Building Center for the removal of the model house from its premises. After consulting with Metropolitan, the plaintiff cut the prefabricated house in half by removing the second story/roof so that the reduced height of the house permitted it to pass beneath all existing transmission wires. All necessary permits and approvals from the appropriate state and municipal authorities, as well as insurance coverage, were obtained by Horgan, and on August 13,1989, Metropolitan moved the house along the originally described course to the intended location without incident. Such move did not require even the temporary relocation or removal of any Mass. Electric poles, wires or supporting structures.
After learning that the house had been successfully moved without its participation, defendant Mass. Electric sent a bill to the plaintiff in the amount of $6,022.00, claiming that this was the actual cost of preparatory work along the route which it had decided to perform without notice to or consultation with Horgan or Metropolitan, and in spite of its repeated refusals to do so without a prepayment. The work for which Mass. Electric billed Horgan did not entail any actual relocation of poles to widen the route, but instead consisted of installing a new 40 foot pole in place of an existing 35 foot pole (#507); installing a new guy stub pole (#3796); installing a new pole top extension *126 (#3795) and attempted relocation work on pole #4390. The report specifically states that all of the described work was done so that Mass. Electric would not have to cut, disconnect or remove its poles, lines and guy wires; that none of the poles in question by themselves interfered with the passage of the house along the public way; that all of the work related to raising wires and guy wires; and that all of the work was permanent. The report also states that these facts were clearly known to Mass. Electric prior to its prepayment demand of $10,900.00.
With respect to pole #4390, the report indicates that although Mass. Electric and Metropolitan had agreed prior to the move that the pole would need to be relocated to permit the clear passage of Horgan’s house, Horgan had disagreed, and had notified Mass. Electric that “the house could pass without trouble, because he measured the width of the road at the location of the pole.” The house was in fact moved past pole #4390 without trouble. No evidence of the width of the road or any other measurement indicating a need to move the pole was introduced by Mass. Electric at trial.
Both parties filed requests for rulings of law at the close of the evidence. The plaintiff claims on this appeal to be aggrieved by the court’s rulings on twelve of the plaintiffs requests and five of the defendant’s requests. Appellate review is limited, however, to those rulings which were briefed or argued by the plaintiff. Dist./Mun.Cts.R.Civ.P.,Rule64(f). See generally, American Guar. & Liab. Ins. Co. v. J.J. O’Brien & Sons, Inc., 1986 Mass. App. Div. 16, 17; Cole v. Cole, 1978 Mass. App. Div. 6. We address, therefore, only the following requests for rulings submitted by the plaintiff:
19. Upon all the evidence, a finding is warranted that no poles and similar structures, such as pole stubs, ‘incommoded’ the public use of public ways in connection with the plaintiff’s move of his house.
11. Upon all the evidence, a finding is warranted that MEC, plaintiff-in-counterclaim, cannot recover against Michael Horgan, defendant-in-counterclaim.
20. The plaintiff is entitled to be compensated for the diminution in value of the building that was moved, as a result of having the roof (upper story) removed in order to facilitate the move of said building under the defendant’s wires, upon afinding that the defendant violated the provisions of G.L.c. 93A
23. Upon all the evidence, afinding is warranted that the defendant knew that no poles or other structures needed to be moved in order to facilitate the moving of the house, as the sole reason for the work on the poles was to raise the wires using the pole in order to maintain service to customers.
29. The only way a defendant can limit his damages to single damages is if the defendant tenders a written offer of settlement with his answer.
1. MASS. ETECTRIC’S COUNTERCLAIM.
The first issue presented on this appeal is whether the evidence introduced at trial was sufficient to support the court’s finding for Mass. Electric on its counterclaim against Horgan.
Despite its confusing syntax and unartful phraseology, plaintiff’s request number 11 effectively posited for the court’s adoption the ruling that the totality of the evidence warranted the conclusion that Mass. Electric could not recover on its counterclaim. Stated alternatively, request 11 sought a ruling that a finding for the plaintiff was required as a matter of law on the counterclaim because Mass. Electric had failed to *127 sustain its burden of proof. The court’s denial of Horgan’s request number 11 was tantamount to a ruling that a finding for plaintiff Horgan was not so required because sufficient evidence was introduced to permit a finding for Mass. Electric on its counterclaim. The denial of request number 11 was error.
Mass. Electric’s counterclaim was in two counts for Horgan’s alleged breach of contract and violations of G.L.c. 93A. With respect to the first count, the report is devoid of any evidence to warrant a finding that Horgan entered into any contract, whether written, oral or implied, with the defendant. The evidence is indeed to the contrary that the plaintiff insisted at all relevant times that the defendant prepare its wires so that the house could be moved at no charge in accordance with the defendant’s G.L.c. 166, §39 duty, see Constantino v. Massachusetts Elec. Co., 1983 Mass. App. Div. 20, 21, while the defendant consistently refused to undertake any action in discharge of its statutory duty until it received its demanded prepayment. The court’s finding that Horgan was contractually obligated to pay forworkon pole#4390 because he requested such work contradicted the only evidence admitted on this issue, and was thus erroneous. Finally, no implied contract arose from Horgan’s failure to halt the work he observed Mass. Electric performing along the route. Such inaction was wholly consistent with Horgan’s position that Mass. Electric was required to perform its statutory duty free of charge, and thus warranted no reasonable inference that Horgan tacitly agreed to pay for such work.
With respect to count 2 of the counterclaim, the report is devoid of any evidence indicative of unfair and deceptive practices by the plaintiff. Contrary to the court’s findings, there was no evidence that the plaintiff mislead or breached any duty owed to the defendant by failing to notify it of the August 13 house move,[2] and no evidence that the plaintiff violated G.L.c. 166, §21A[3] in the course of such move.
Given the absence of any evidence to warrant a finding for Mass. Electric on its counterclaim, the court’s judgment on the counterclaim must be reversed.
2. MASS. ELECTRIC’S LIABILITY FOR UNFAIR AND DECEPTIVE PRACTICES.
Horgan’s requests numbers 9 and 23 sought rulings of law that some evidence was introduced to permit afinding in his favor of the facts recited in such requests. Ryerson v. Fall River Philanthropic Burial Society, 315 Mass. 244, 247 (1943). The denial of these requests constituted a ruling that the evidence was insufficient as a matter of law to permit such findings. Bresnick v. Heath, 292 Mass. 293, 298 (1935). The report *128 clearly states, however, that evidence was introduced at trial that none of the electric poles in question interfered with the passage of the plaintiffs house along public ways, and that such facts were known to the defendant prior to its prepayment demand. As nothing in the trial court’s findings of fact rendered such evidence immaterial, or demonstrated that the court's denials of requests 9 and 23 were not based on the insufficiency of the evidence, such denials were error. Perry v. Hanover, 314 Mass. 167, 173-174 (1943).
Plaintiff s requests numbers 20 and 29 raise issues as to the trial court’s assessment of G.L.c. 93A damages against the defendant herein. The court found that Mass. Electric violated G.L.c. 166, §39 by charging the plaintiff for raising electric wires on poles #5707 and #3795, see Eastern Edison Co. v. Barrett, 22 Mass. App. Ct. 357, 359 (1986),[4] and that such unlawful action constituted an unfair and deceptive practice in violation of G.L.c. 93A, §11. Constantino v. Massachusetts Elec. Co., supra at 21. The court also reported to this Division specific evidence that the defendant not only knew that its work on the poles was undertaken solely to raise electric wires, but also had knowledge of its statutory duty to raise such wires without charge to the plaintiff. In view of such evidence of a knowing violation of G.L.c. 93Aby the defendant, the denial of plaintiffs request 29 as to multiple damages was error. Section 11 of G.L.c. 93A clearly states:
The respondent may tender with his answer in any such action a written offer of settlement for single damages. If such tender or settlement is rejected by the petitioner and the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner, then the court shall not award more than single damages.
The court specifically ruled herein (in response to defendant’s request number 4) that Mass. Electric’s offer of settlement was not timely. The logical conclusion to be drawn is that such tender was ineffective in limiting Mass. Electric’s liability to single damages.[5]
On the basis of the foregoing, the trial court’s entry of judgment for Mass. Electric on its counterclaim is hereby reversed and vacated, and judgment is to enter for Horgan, the plaintiff/defendant-in-counterclaim. The court’s finding for plaintiff Horgan on his complaint is affirmed. The case is returned to the trial court for a new hearing on the assessment of G.L.c. 93A actual and punitive damages to be awarded to the plaintiff. Judgment in the amount of such damages is then to be entered for the plaintiff. So ordered.

 General Laws c. 166, §39 provides in relevant part: ‘Whenever, in order to move a building ... a person who desires that the wires of any such company be cut, disconnected or removed, the company shall forthwith cut, disconnect or remove the same, if the person desiring this to be done has first left a written statement, signed by him, of the time when, and the place, described by reference to the crossings of streets or highways, where he wishes to remove said wires, at the office of the company... seven days before the time so stated....”

The notice requirement of G.L.c. 166, §29 arises only when the mover requires the utility to “cut, disconnect or remove” its wires. The plaintiff was able to accomplish the August 13 move without such action by the defendant. The statute confers no right to notice upon the utility, but instead imposes a duty upon receipt of such notice. See generally, New England Tel. & Tel. Co. v. Dover-Sherborn Regional School Dist., 8 Mass. App. Ct. 891 (1979). The only right involved herein was that of the plaintiff who, having obtained the necessary governmental permits and approvals, was engaged in a permissible use of apublic way. A.M. Richards Bldg. Mov. Co. v. Boston Elec. Light Co., 188 Mass. 265 (1905).

 General Laws c. 166, §21Astates: “No person shall require or permit any employee to operate a crane, power shovel or other such types of construction equipment in close proximity to overhead high voltage lines ... unless and until contact with said high voltage lines has been effectively guarded against.... For the purpose of this section... ‘in close proximity to overhead high voltage lines’ shall mean within six feet of such lines.” The report expressly states that no evidence was introduced at trial as to the distance between any Mass. Electric wires along the route and the top of the structures moved.

 A utility company may seek reimbursement for the temporary removal of its poles to facilitate moving a house along a public way. Casey v. Massachusetts Elec. Co., 392 Mass. 876, 882-883 (1984). However, the report in this case clearly indicates that all of the work for which Mass. Electric illegally billed the plaintiff was of a permanent character and did not entail the relocation or removal of poles.

In rejecting Horgan’s claim for G.L.c. 93A punitive damages, the court ruled only that an assessment of before “treble damages” was unwarranted because there was no “willful or knowing intention to deceive or behave unfairly” on Mass. Electric’s part. Proof of afraudulent intent is, however, unnecessary, and certainly “double” damages may be assessed upon clear proof, as in the instant case, of a party’s full knowledge of both its statutory duty, and all facts constituting a breach of such duty.