NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1982                                      Appeals Court

LUMBERMENS MUTUAL CASUALTY COMPANY  vs.  WORKERS' COMPENSATION TRUST FUND.


No. 13-P-1982

Suffolk.      June 2, 2015. - September 3, 2015.

Present:  Vuono, Grainger, & Blake, JJ.

Workers' Compensation Act, Reimbursement of insurer.  Insurance, Insolvency of insurer.  Administrative Law, Primary jurisdiction, Exhaustion of remedies, Agency's interpretation of statute.


Civil action commenced in the Superior Court Department on May 21, 2013.

The case was heard by Heidi E. Brieger, J.


W. Frederick Uehlein for the plaintiff.
Douglas S. Martland, Assistant Attorney General, for the defendant.


GRAINGER, J.  Lumbermens Mutual Casualty Company in liquidation (Lumbermens) appeals from the Superior Court judgment dismissing its claim against the Workers' Compensation Trust Fund (trust fund).  Lumbermens sought partial reimbursement from the fund for workers' compensation payments

made pursuant to G. L. c. 152, §§ 37 and 65.  A Superior Court judge dismissed the claim under the doctrine of primary jurisdiction.  We affirm.

Background.  We summarize the undisputed facts. Lumbermens, an Illinois Corporation, was licensed to issue workers' compensation insurance policies in Massachusetts. Payments under these policies included so-called "second injury" benefits awarded pursuant to G. L. c. 152, § 37.[1]  The trust fund is authorized by that statute to provide partial reimbursement to insurers for second injury payments.  Between 2000 and 2008 Lumbermens and the trust fund entered into agreements in six separate cases, referred to as Form 123 agreements,[2] establishing the reimbursement percentage to be applied to "second injury" payments made by Lumbermens in each case.

In July, 2012, Lumbermens was placed into rehabilitation, also referred to as a "run-off" period, whereby it could not issue new policies but continued to administer existing policies.  The trust fund, which had made reimbursement payments pursuant to the Form 123 agreements until Lumbermens entered the run-off period, thereafter refused further payment.  The trust

---

[1] These may be generally described as injuries resulting from aggravation of preexisting conditions.  See Oakes's Case, 67 Mass. App. Ct. 81, 82-83 (2006), S.C., 451 Mass. 190 (2008).

[2] The nomenclature refers to the form used by the Department of Industrial Accidents to memorialize the § 37 reimbursement agreements between the trust fund and the insurer.

fund asserted that Lumbermens was no longer entitled to reimbursement once the run-off period commenced because it was no longer an "insurer" able to issue policies, as that term is defined in G. L. c. 152, § 1(7). Ten months later, in May, 2013, Lumbermens was placed in liquidation.

Approximately one year thereafter Lumbermens filed a complaint for enforcement of the six Form 123 agreements in Superior Court. A Superior Court judge dismissed the complaint, finding that Lumbermen's claims were more properly heard before the reviewing board (board) of the Department of Industrial Accidents (DIA) under the primary jurisdiction doctrine. Lumbermens filed a timely appeal.

During the pendency of the appeal the trust fund modified the application of its § 37 reimbursement policy to insurers in liquidation and reimbursed Lumbermens pursuant to the Form 123 agreements. In August, 2014, Lumbermens filed claims before the board for interest and attorney's fees generated by the trust fund's initial refusal, and ultimate delay, in providing reimbursement.[3]

---

[3] After the trust fund changed its § 37 reimbursement policy, it secured a stay of Lumbermens's appeal to assess whether Lumbermens's claims would be paid voluntarily. During the stay, the trust fund reimbursed Lumbermens in full. The trust fund requested that the stay continue until the parties could resolve Lumbermens's related claims for interest and attorney's fees then pending before the DIA. The stay initially was continued for that purpose but subsequently was vacated when

Discussion. Mootness. The trust fund asserts that payment of the amounts specified by the Form 123 agreements renders Lumbermens's appeal moot, as the parties' remaining dispute over interest and fees was voluntarily presented to the board by Lumbermens itself. We are persuaded by Lumbermens's rejoinder that this case presents a recognized exception to the mootness doctrine, because the jurisdictional issue, fully briefed and argued, can be rendered "capable of repetition, yet evading review" by the simple expedient of payment in a case whenever denial of reimbursement is challenged. Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984), quoting from Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975); Souza v. Registry of Motor Vehicles, 462 Mass. 227, 228 n.3 (2012). We consider Lumbermens's submission of its remaining claims to the board simply to be recognition that further efforts in the Superior Court would have been a futile expenditure of time and resources. We note as well that the jurisdictional interplay between the board and the Superior Court has been discussed by the Supreme Judicial Court, see Weitzel v. Travelers Ins. Cos.,

---

the parties could not reach an agreement on reimbursement of interest and fees. The parties thereafter filed their briefs in this case.

417 Mass. 149 (1994),[4] but that the specific provision here in dispute has been addressed to date only by the Superior Court.[5]

Primary jurisdiction. We turn first to the language of G. L. c. 152, § 19(1), inserted by St. 1987, c. 691, § 9:

"Except as otherwise provided by section seven, any payment of compensation shall be by written agreement by the parties and subject to the approval of the department. Any other questions arising under this chapter may be so settled by agreement. Said agreements shall for all purposes be enforceable in the same manner as an order under section twelve."

The general import of this paragraph is easily discerned. Because the purpose of the workers' compensation scheme is to protect injured workers, agreements that determine the compensation to be paid to injured workers are subject to DIA review and approval. Weitzel, supra at 153. However, "[a]ny other questions," which would include the reimbursement agreements underlying the dispute in this case, may be settled by agreement without DIA approval. Moreover, these noncompensation related agreements may be enforced under the provisions of G. L. c. 152, § 12, which provide for submission "to the superior court department of the trial court for the county in which the injury occurred or for the county of

---

[4] Weitzel, unlike this case, concerned a compensation agreement; those are made explicitly subject to DIA approval by the first sentence of G. L. c. 152, § 19(1).

[5] Arrowood Indem. Co. vs. Workers' Compensation Trust Fund, Suffolk Superior Court, No. SUCV-2015-00585 (March 24, 2015).

Suffolk." G. L. c. 152, § 12(1), inserted by St. 1985, c. 572, § 26. Otherwise stated, they are enforceable just as though they had been the subject of an administrative order.[6]

It is thus made explicit by statute that the Superior Court has jurisdiction to enforce a noncompensation related agreement that was not subject to prior DIA approval. This determination does not, however, end our inquiry. Specifically, we must consider whether the judge erred in determining in this case that the doctrine of primary jurisdiction justified requiring the parties to submit this question to the board.

"The doctrine of primary jurisdiction . . . 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass 217, 221 (1979), quoting from Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 303 (1976). The doctrine applies to promote "'[u]niformity and consistency in the regulation of business entrusted to a particular agency' or 'when the issue involves technical questions of fact uniquely within the expertise and experience of an agency.'" Casey v.

---

[6] We are unpersuaded by the trust fund's assertion, contrary to the clear language of G. L. c. 152, § 19(1), that the DIA must convert a noncompensation related agreement into an administrative order or decision as a prerequisite for enforcement in the Superior Court pursuant to G. L. c. 152, § 12(1).

Massachusetts Elec. Co., 392 Mass. 876, 879 (1984), quoting from

Nader, supra at 303-304.[7]

Comparison with the closely related doctrine of exhaustion

of administrative remedies is instructive. While both doctrines

are rooted in the principle of administrative expertise, they

differ in two respects. First, the exhaustion doctrine applies

to the failure to obtain final resolution at the agency level of

a dispute or an issue already committed to the administrative

process. Murphy, supra at 220. By contrast, as in this case,

"primary jurisdiction situations arise in cases where a

plaintiff, in the absence of pending administrative proceedings,

invokes the original jurisdiction of a court to decide the

merits of a controversy." Ibid.

The second distinction is found in the more definitive

nature of the exhaustion doctrine -- a court is without

jurisdiction to entertain an appeal from administrative

proceedings that are incomplete. This "preserve[s] the

integrity of the administrative process while sparing the

judiciary the burden of reviewing administrative proceedings in

---

[7] We do not suggest that every noncompensation related
agreement will be appropriately remanded to the board to satisfy
the doctrine of primary jurisdiction. To the contrary, there
are circumstances involving "questions of law which have not
been committed to agency discretion," where such agreements are
properly resolved by a court in the first instance. Murphy,
supra at 221. Any other result would vitiate the difference in
wording between the first two sentences of § 19(1).

a piecemeal fashion." Id. at 220, citing Assuncao's Case, 372 Mass. 6, 8-9 (1977). Where, however, a plaintiff invokes the jurisdiction of a court in the absence of administrative proceedings, it becomes necessary to make a determination (generally unnecessary to a matter already before an agency) whether the nature of the controversy is "uniquely within the expertise and experience of [the] agency" in question. Casey, supra at 879, quoting from Nader, supra at 304.

We conclude that the dispute in this case satisfies that test enunciated by Nader and found in Massachusetts cases such as Murphy and Casey. The fund's determination that Lumbermens no longer qualified as an insurer eligible for reimbursement under the form 123 agreements was based on its interpretation of G. L. c. 152, § 37. The DIA was established to apply its "expertise to the statutory scheme which . . . it has the primary responsibility of enforcing." Assuncao's Case, supra at 9. We accord "substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration." Molly A. v. Commissioner of the Dept. of Mental Retardation, 69 Mass. App. Ct. 267, 280 (2007), quoting from Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006).

In this case the requirement of deference, hence the invocation of primary jurisdiction, is reinforced by the

particulars of the interpretive dispute, involving reasonably plausible arguments on each side. The trust fund relies on the words "authorized so to do" in the definition of an "insurer" as these words modify "any insurance company . . . which has contracted with an employer to pay [workers'] compensation." G. L. c. 152, § 1(7). The trust fund points out that, once the run-off period commenced, Lumbermens was not "authorized" to enter into any contracts with employers; hence it can no longer be considered an insurer. Lumbermens, by contrast, relies on the past tense of the phrase "which has contracted with an employer" and argues that its previous contracts, made with then-existing authority, serve to define it as an insurer entitled to reimbursement under § 37 on a continuing basis. Ibid. "Given . . . two equally plausible readings of the statutory language [courts are required to] defer to [an agency's] reasonable interpretation." Falmouth v. Civil Serv. Commn., 447 Mass. 814, 821 (2006).

Conclusion. The Legislature has directed that, unlike agreements related to the compensation paid to injured workers, noncompensation agreements may be enforced in the Superior Court without the mandatory prerequisite of DIA approval. G. L. c. 152, § 19(1). The legislative direction, however, does not relieve a court of its obligation to determine whether a specific noncompensation issue is subject to the doctrine of

primary jurisdiction and the underlying policies that weigh in favor of "[u]niformity and consistency in the regulation of business entrusted to a particular agency."  Casey, 392 Mass. at 879, quoting from Nader, 426 U.S. at 303-304.  The judge determined correctly that this case falls into that category.

Judgment affirmed.